UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- x

CANNISTRA REALTY, LLC,

               Plaintiff,

      -against-

UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY, ANDREW
WHEELER, in his official capacity as Administrator
of the United States Environmental Protection
Agency, and ANGELA CARPENTER, in her
official capacity as Acting Director of the
Emergency and Remedial Response Division of the
United States Environmental Protection Agency,
Region 2,

               Defendants.
-------------------------------------------------------------------- x

Civil Action No.

**COMPLAINT**

      As and for its Complaint in this matter, Plaintiff Cannistra Realty, LLC ("Cannistra")

alleges against Defendants United States Environmental Protection Agency, Andrew

Wheeler, in his capacity as Administrator of the United Stated Environmental Protection

Agency, and Angela Carpenter, in her capacity as Acting Director of the Emergency and

Remedial Response Division of the United States Environmental Protection Agency, Region

2, as follows:

      1.     Cannistra commences this action seeking declaratory relief from this Court to

vacate, set aside or otherwise modify an Administrative Order, Index No. CERCLA-02-

2019-2009 issued on March 12, 2019 and signed by Angela Carpenter, Acting Director,

Emergency and Remedial Response Division, U.S. Environmental Protection Agency,

Region II to Cannistra under Section 104(e)(5) of the Comprehensive Environmental

Response, Compensation and  Liability Act of 1980, as amended (CERCLA), 42 U.S.C.

§9604(e)(5) (the "Administrative Order"), as said Administrative Order is arbitrary, capricious, without foundation in the Record and in contravention to the statutory authority upon which it was issued.

## The Parties

2.     Plaintiff Cannistra is a limited liability company registered in New York State with a mailing address of 43 Kensico Drive, 2nd Floor, Mount Kisco, New York.

3.     Defendant United States Environmental Protection Agency is a governmental agency of the United States within the executive branch of the federal government. Its principal office is at 1200 Pennsylvania Avenue, N.W., Washington, D.C. 20460.

4.     Defendant Andrew Wheeler is the Administrator of the United States Environmental Protection Agency. He is named in his official capacity.

5.     Defendant Angela Carpenter is the Acting Director of the Emergency and Remedial Response Division of the United States Environmental Protection Agency, Region 2. Defendant Angela Carpenter signed the Administrative Order, dated March 12, 2019. She is named in her official capacity.

6.     Defendants United States Environmental Protection Agency, Andrew Wheeler and Angela Carpenter are collectively referred to herein as "EPA."

## Jurisdiction and Venue

7.     This Court has jurisdiction under 5 U.S.C. §701 *et seq.*, under 28 U.S.C. §1331, and under 42 U.S.C. § 9613(b) of the Comprehensive Environmental Response, Compensation and Liability Act.

8.     Venue is proper under 28 U.S.C. §§ 1391(b) and 1391(e)(1), and 42 U.S.C. § 9613(b) because a substantial part of the events or omissions giving rise to the claim occurred in the Southern District of New York, and because the property that is the subject of this action is situated in the Southern District of New York.

**The Subject Property**

9.     Cannistra owns the real property at issue herein which is described in the Administrative Order as being "approximately 0.5 acres in size. The subject property is identified by municipal tax parcel number 69.65-2-3 and has a mailing address of both 115 Kisco Avenue and 125 Kisco Avenue, Mount Kisco, New York" (the "Site") (Administrative Order, Findings of Fact ¶4). The Site is within the jurisdiction of the United States Environmental Protection Agency, Region 2.

10.     Cannistra acquired the Site on February 22, 1996. Its Members, who are accountants, occupied the Site and used it as their principal office from approximately 1988 until 2013. Their professional offices were staffed with accountants, support staff and sub-tenants, the principal use being office space.

11.     In 2013, Cannistra entered into a long term, exclusive lease with a car dealership, Tesla, which lease commenced on August 15, 2013 for an initial term of 10 years and 3 months with two five year renewal options.

12.     Tesla is the sole tenant of the Site and uses it as a showroom for the sales of new Tesla vehicles, the delivery of new vehicles that have been sold, servicing of its vehicles and customer charging of their vehicles. This location is Tesla's number one sales center in the northeast United States.

13.     Tesla's use at the Site includes a showroom where potential customers have the ability to view the Tesla vehicles offered for sale.  The salesroom is staffed by sales agents, managers and administrative staff.  The Tesla showroom is open Monday through Fridays from 10:00 a.m. to 7:00 p.m., Saturday from 10:00 a.m. to 6:00 p.m. and Sunday 11:00 a.m. to 6:00 p.m.

14.     Tesla prepares the cars on-site for delivery and delivers the cars to new customers on-site in the parking lot.

15.     Tesla also maintains a service center on the Site where multiple vehicles are serviced inside the building.  Cars that are waiting for service or have completed service are stored at the on-site parking lot.  The Tesla service hours are Monday to Friday from 8:00 a.m. to 6:00 p.m. and Saturday from 8:00 a.m. to 4:00 p.m.

16.     The Tesla service center includes a customer lounge so that customers can wait while their cars are being serviced and/or charged.

17.     At any given time during business hours, the Tesla parking lot is completely occupied by a) cars waiting for delivery to new customers; b) cars waiting for service; c) cars that have been serviced and are waiting for customers to pick up; d) cars of potential customers visiting the showroom; e) cars of Tesla employees; and f) vendor vehicles performing deliveries of new cars and car parts during the day.  A large number of Tesla employees and customers are on the site during business hours.

18.     Tesla is not permitted to park or deliver its vehicles off-site and all employee cars must be parked on-site.

19.     Tesla has over twenty-five (25) employees at the Site.

**Canadian Radium Site**

20.    The Site is immediately adjacent to 105 Kisco Avenue which comprises a portion of the Canadian Radium Corporation Superfund Site (the "Canadian Radium Site"). EPA has documented the release and/or present release of hazardous substances into the environment at the Site.  Such hazardous substances include radium-226 and thorium-230. (Administrative Order, Findings of Fact ¶5).

21.    The radioactive contamination present at the Canadian Radium Site is believed to be attributable to the historic operation of the Canadian Radium and Uranium Corporation ("CRU") facility, formerly located at the Canadian Radium Site where operations occurred from approximately 1943 to 1966.  (Administrative Order, Findings of Fact ¶6).

22.    In 1966 the CRU facility was demolished as part of the Mount Kisco Urban Renewal Project.  (Administrative Order, Findings of Fact ¶7).

23.    Since the late 1970's EPA and other State and Local agencies performed periodic investigations of the radioactive contamination at the Canadian Radium Site. (Administrative Order, Findings of Fact ¶8).

24.    Now, some forty years after EPA and other State and Local agencies have known about the site, the EPA had recently renewed investigations at the Canadian Radium Site.  In 2015 and 2016, EPA performed removal assessment activities at the Canadian Radium Site which included radiological survey and soil sampling.  (Administrative Order, Findings of Fact ¶8).

25.     Analytical results of the soil sampling at the Canadian Radium Site indicated exceedances of EPA Site specific action levels for radium-226.   (Administrative Order, Findings of Fact ¶8).

**EPA Request For Access To The Cannistra Site**

26.     EPA conducted its investigation activity at the Canadian Radium Site and had results from said investigation in 2016 and 2017, but EPA did not contact Cannistra until May 10, 2018 when the EPA Project Manager telephoned a principal of Cannistra and requested access to the Site.

27.     Thereafter, Cannistra sought additional information from EPA including the opportunity to review the historic information presented in the 2016 and 2017 report and a work plan for the work EPA proposed to be performed on Cannistra's property, which was provided on June 15, 2018.

28.     In August 2018, Cannistra provided EPA with a response indicating consent would be granted to EPA provided that certain assurances were given by EPA including insurance from EPA's contractors and that the hours of operation by EPA and its contractors would not interfere with the tenant's use of the Site.

29.     EPA refused to agree to modify its scheduled activities so as to take into account the tenant's intense use of the Site and so that such work would not interfere with tenant's use of the Site.

30.     Cannistra and EPA met on November 1, 2018, but the EPA continued to refuse to make reasonable modifications to its time to access the Site and perform its testing work.

7787/01/670809v3  4/22/19

31.    After the meeting, Cannistra transmitted a letter on November 9, 2018 to the EPA setting forth its request, and confirming it would grant access to the Site and requested the following from EPA:

      a) That our client and the tenant be named as additional insured on the contractor's and any subcontractor's general liability and worker's compensation insurance and proof of same be provided in advance of work commencing.

      b) The air canisters for the radon testing be installed and removed during the non-operating hours of the tenant. We previously provided you with the tenant's operating hours and it does not appear this request is onerous. For example, a 72 hour test could be implemented in such a manner that the canisters are installed on a Wednesday evening after 8:00 p.m. and collected on a Sunday morning before 11:00 a.m.

      c) As it appears the gamma ray detector using the "buggy" could be performed in 2 to 3 hours, that work can be completed during overnight hours or even commence on a Sunday at 7:00 a.m. and be completed prior to the tenant's operations commencing at 11:00 a.m.

      d) Once the results of the radon and gamma survey testing are received and provided to our client, we can then discuss a schedule for installing the soil borings, should such additional work be necessary. We request the work be performed during overnight hours. Our client is agreeable to paying for and providing portable lights.

32.    Despite Cannistra confirming it would provide access to EPA to the Site, EPA refused to cooperate with Cannistra and by communication dated December 4, 2018 confirmed that it would not modify such a request for access to take into account Cannistra and its tenant's legitimate business and safety concerns.

33.     Thereafter, EPA was silent over the intervening three months until the issuance of the Administrative Order on March 12, 2019.

**The March 12, 2019 Administrative Order**

34.     The Administrative Order set forth nine (9) Findings of Fact, none of which described the subject property or recognized the use of the property as a car dealership or the hours of operation of the car dealership.  Thus, the Administrative Order was devoid of any findings of fact, analysis or recognition as to the timing of its access to the Site, in defiance of the very statute the EPA was drawing upon for its authority, which requires that such access be upon "reasonable times."

35.     The Administrative Order directed Cannistra to provide unfettered access to the property, set forth various enforcement provisions and provided Cannistra with an opportunity to confer with EPA regarding its Order.

36.     Upon receipt of the Administrative Order, Cannistra made a further good faith effort to cooperate with EPA and offered to pay, at its cost and expense, any additional costs EPA or its contractor would incur by performing its investigation work during hours that did not interfere with the tenant's operations.  EPA refused such reasonable request.

37.     Cannistra timely indicated its request for an opportunity to confer with EPA. Such conference was convened at EPA's headquarters on April 4, 2019, during which time Cannistra advised EPA of procedural and substantive flaws in EPA's Order including nonexistent findings of fact and how the Administrative Order was in contravention of the law.

38.   Notwithstanding the conference, on April 11, 2019, EPA refused to modify its Order.

## AS AND FOR ITS FIRST CAUSE OF ACTION

39.   Cannistra repeats and realleges each and every allegation set forth in Paragraph "1" to "38" as though repeated fully herein.

40.   Congress has granted EPA the authority to access property pursuant to 42 U.S.C. §9604.

41.   42 U.S.C. §9604(e)(3) entitled Information Gathering and Access, Entry, provides that "any officer, employee or representative [of EPA] is authorized to enter at *reasonable times* property where entry is needed to determine the need for response or the appropriate response or to effectuate a response action under this sub-chapter." (emphasis added).

42.   Section 42 U.S.C. 9604(e)(4)(a) also provides that each such inspection shall be completed with "reasonable promptness."

43.   In authorizing EPA with the ability to enter upon properties for purpose of investigations, Congress limited EPA's powers to be reasonable for the time of access and that such activities be done promptly.  EPA's Administrative Order is in contravention of 42 U.S.C. §9604 as it does not provide for entering upon reasonable times.

44.   Rather, the Order states in paragraph 17:

> Based on the Findings of Fact and Conclusions of Law and determinations set forth above, and on the Administrative Record for this Order, Respondent is hereby ordered to provide to EPA and its officers, employees, agents, contractors, and any other designated representatives *full and unrestricted entry and access*

to the subject property for the purpose of performing investigatory response activities, including the tasks referred to in Paragraph 9, above.  Respondent shall provide such access to the subject property from the effective date of this Order until EPA informs Respondent in writing that the activities for which access is needed are complete and EPA no longer requires access to perform the above-described response activities.  EPA anticipates the duration of access to be four to six days. (emphasis added).

45.     EPA's Administrative Order is in contravention of 42 U.S.C. §9604 as it does not set forth reasonable times for which EPA shall have access.   Rather, EPA has determined that it can have access at any time.

46.     Accordingly, for the reasons set forth herein, Cannistra respectfully requests the Court make a Declaration that EPA's Administrative Order is in contravention of law as it fails to authorize EPA access to the property at reasonable times.

## **AS AND FOR A SECOND CAUSE OF ACTION**

47.     Cannistra repeats and realleges each and every allegation set forth in Paragraph "1" to "46" as though repeated fully herein.

48.     EPA's Administrative Order is arbitrary and capricious as the Findings of Fact fail to recite any facts regarding the reasonableness of the access EPA granted itself pursuant to the Order, which such access is full, unrestricted access to perform the investigatory work at any time of day and on any day, in essence, 24/7.

49.     There is no finding of fact as to the current use of the property.

50.     There is no finding of fact as to the tenant on the property.

51.     There is no finding of fact as to the hours of operation on the property.

52.     There is no finding of fact as to if EPA's proposed investigatory work would interfere with the tenant's use of the property.

53.     There is no finding of fact as to whether EPA's investigatory activities would interfere with the general public's use of the property.

54.     There is no finding of fact as to whether Cannistra's request that the work be performed after hours, at Cannistra's expense, is reasonable.

55.     There is no finding of fact at all as to the reasonableness of the access that has been ordered.

56.     The Findings of Fact are deficient in that Cannistra granted access to EPA subject to the access being at reasonable times.

57.     Accordingly, for the reasons set forth herein, Cannistra respectfully requests that the Court declare the Administrative Order as procedurally and substantively deficient and an abuse of EPA's discretion and the Order be stricken and vacated.

**WHEREFORE**, Cannistra respectfully requests the following relief:

1)  On its First Cause of Action, a declaration that EPA has violated 42 U.S.C. §9604 by issuing an Administrative Order that provides for access at all times of the day without providing for any provision that such access be at reasonable times taking into account the current use of the property and accommodations offered by Cannistra;

2)  On its Second Cause of Action, Court issue a declaration striking and vacating the Administrative Order as an abuse of discretion and arbitrary and

capricious for failing to make any findings of fact relevant to the reasonableness of the hours of access directed by EPA; and

3) The Court make any other determinations and granting of relief as it deems appropriate.

Dated:   White Plains, New York
April 22, 2019

KEANE & BEANE, P.C.

By: _____
Nicholas M. Ward-Willis
Attorneys for Plaintiff
445 Hamilton Avenue, 15th Floor
White Plains, New York 10601
(914) 946-4777